CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs:
Definition Delaware, LLC, and
Fallen Productions, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Definition Delaware, LLC and Fallen Productions, Inc., | **Case No.: 1:20-cv-27** (Copyright) |
| Plaintiffs, | **COMPLAINT; EXHIBITS 1-4** |
| vs. | |
| Puakailima Davis, | **(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT** |
| Defendant. | **(2) DIRECT COPYRIGHT INFRINGEMENT** |

## <u>COMPLAINT</u>

Plaintiffs Definition Delaware, LLC and Fallen Productions Inc. (collectively:

"Plaintiffs") file this Complaint against Defendant Puakailima Davis ("Defendant")

and allege as follows:

### I.   NATURE OF THE ACTION

1.   This matter arises under the United States Copyright Act of 1976, as

amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiffs allege that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) contributory copyright infringement.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that her acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over her.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant resides, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendant or Defendant's agents resides or may be found in this District.

## III.   PARTIES

20-020B

## A.   The Plaintiffs

6.     The Plaintiffs are owners of the copyrights for the motion pictures (hereafter: "Works"), respectively, as shown in Exhibits 1-2.

7.     Plaintiff Fallen Productions, Inc. is a corporation organized and existing under the laws of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

8.     Plaintiff Definition Delaware, LLC is a limited liability company registered under the laws of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

## B.   The Defendant

9.     Upon information and belief, Defendant is an adult female over 21 years of age and a resident of Honolulu County.

10.     Defendant is a member of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case for *Angel Has Fallen* is: SHA1: SHA1: B7330F69794B69D7BD009FEFE4035F4D4F833B6C (the "Unique Hash Number").  The file name is "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]".

3

11.    Upon information and belief, Defendant received from Plaintiffs' agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

12.    Defendant, from Internet Protocol ("IP") address 72.130.57.100, used a registered account associated with the email address "datweet01@gmail.com" to access torrent files from YTS ("YTS website").

13.    The YTS website is currently accessible at YTS.LT and was previously accessible at YTS.AM and YTS.AG.

14.    The YTS website is known for distributing torrent files of copyright protected motion pictures.

20-020B



15.



16.

17.    Defendant logged into her email address from IP address 72.130.57.100 on 2019/09/06-16:30:38-UTC.

18.    Defendant logged into her email address from IP address 74.87.50.158 on 2019/07/25-08:47:19-UTC.

## IV.    JOINDER

19.    Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of the YTS website by Defendant for copying and distributing Plaintiffs' Works; and (b) that there are common questions of law and fact.

## V.    FACTUAL BACKGROUND

### A.  The Plaintiffs Own the Copyrights to the Works

6

20-020B

20.    The Plaintiffs are the owners of the copyright in the Works, respectively.  The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibits 1-2.

21.    Each of the Works are motion pictures currently offered for sale in commerce.

22.    Defendant had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

23.    Defendant also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

24.    The Works are motion pictures currently offered for sale in commerce.

25.    For example, a Blu-ray copy of the Work *Angel Has Fallen* was recently available for sale at a retailer in Kailua Kona, Hawaii for $22.19.

20-020B



26.    The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

27.    Defendant used the YTS website to download torrent files associated with Plaintiff Fallen Productions, Inc.'s Works

28.    The YTS website displays, "WARNING! Download only with VPN..." and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage. Upon information and belief, this warning has appeared on the YTS website since 2018.

20-020B

### *B. Defendant Used BitTorrent To Infringe the Plaintiffs' Copyrights.*

29.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

30.    The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### *1. Defendant installed a BitTorrent Client onto his or her Computer.*

31.    A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

32.    Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

33.    Defendant installed a BitTorrent Client onto her computer.

9

20-020B

### *2. The Initial Seed, Torrent, Hash and Tracker*

34.    A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

35.    The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

36.    The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

37.    When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

38.    Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

20-020B

39.  The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

40.  The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

41.  Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

42.  "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including the website YTS.

43.  Defendant went to torrent sites including the website YTS to upload and download Plaintiffs' copyrighted Works.

### 4. The Peer Identification

44.  The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

45.  Upon information and belief, Defendant was assigned a Peer ID by her

20-020B

BitTorrent client.

### 5. Uploading and Downloading a Work Through a BitTorrent Swarm

46.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

47.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

48.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

49.    In this way, all of the peers and seeders are working together in what is called a "swarm."

50.    Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

51.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site,

20-020B

and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

52.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***6. The Plaintiffs' Computer Investigator Identified the Defendant's IP Addresses as Participants in Swarms That Were Distributing Plaintiffs' Copyrighted Works.***

53.     The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

54.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

55.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

20-020B

56.    The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibits 3-4 accurately reflect what is contained in the evidence logs.

57.    The IP addresses shown in Exhibits 3-4 are associated with Defendant.

58.    The logged information in Exhibits 3-4 show that Defendant copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

59.    The Defendant's computers used the identified IP addresses in Exhibits 3-4 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

60.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibits 3-4 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

61.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### *C. Defendant seeded and distributed full copies of the Works*

62.    Defendant downloaded and/or uploaded torrent files of the Works to and/or from the YTS website from one or more computing devices under his control.

63.    Defendant seeded copies of the Works from computing devices under her control.

14

20-020B

64.     Upon information and belief, Defendant does not have a DMCA agent as required by the DMCA to assert safe harbor at the time of the infringements.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

65.     Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

66.     Plaintiffs are the copyright owners of the Works which each contains an original work of authorship.

67.     Defendant copied the constituent elements of the Works.

68.     Plaintiffs did not authorize, permit, or provide consent to Defendant to copy, reproduce, redistribute, perform, or display their Works.

69.     As a result of the foregoing, Defendant violated the Plaintiffs' exclusive rights to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

70.     Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

71.     The Plaintiffs have suffered damages that were proximately caused by the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of their copyrights.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in

15

20-020B

**the BitTorrent Swarm)**

72.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

73.    By participating in the BitTorrent swarms with others, Defendant induced, caused or materially contributed to the infringing conduct of others.

74.    Plaintiffs did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of others.

75.    Defendant knew or should have known that the other BitTorrent users in a swarm with her were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original.  Indeed, Defendant directly participated in and therefore materially contributed to others' infringing activities.

76.    The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

77.    By engaging in the contributory infringement alleged in this Complaint, the Defendant deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in

16

Hawaii and their employees, and, ultimately, the local economy.  The Defendant's misconduct therefore offends public policy.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining Defendant from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendant which she used to infringe Plaintiffs' Works immediately cease said service;

(C) award the Plaintiffs' actual damages and Defendant's profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages per Work pursuant to 17 U.S.C.  § 504-(a) and (c);

(D) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(E) grant the Plaintiffs any and all other and further relief that this Court deems just and proper.

The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, January 21, 2020.

17

20-020B

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs

20-020B